UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Gregory McNutt, et al.

   v.

Wells Fargo Bank, N.A., et al.

Case No. 16-cv-405-AJ
Opinion No. 2017 DNH 067

**MEMORANDUM AND ORDER**

In an amended complaint, the plaintiffs, Gregory and Sara McNutt, allege that Wells Fargo Bank, N.A. and America's Servicing Company ("Wells Fargo"[1]) violated federal and state law with regard to a balloon payment due on the maturity date of the plaintiffs' modified mortgage. Doc. no. 7. Wells Fargo moves to dismiss under Federal Rule of Civil Procedure ("Rule") 12(b)(6) for failure to state a claim. Doc. no. 9. The plaintiffs object. Doc. no. 10. For the following reasons, Wells Fargo's motion is granted in part and denied in part.

**Standard of Review**

Under Rule 12(b)(6), the court must accept the factual

---

[1] In the motion to dismiss, it is alleged that America's Servicing Company is the trade name of Wells Fargo Home Mortgage, a division of Wells Fargo Bank, N.A., and accordingly not a separate entity. The plaintiffs do not dispute this assertion. The court will accordingly refer to the named defendants singularly as "Wells Fargo" in this order.

allegations in the complaint as true, construe reasonable inferences in the plaintiff's favor, and "determine whether the factual allegations . . . set forth a plausible claim upon which relief may be granted." Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 71 (1st Cir. 2014) (citation and quotation marks omitted).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Analyzing plausibility is "a context-specific task" in which the court relies on its "judicial experience and common sense."  Id. at 679.

The scope of the court's analysis on a Rule 12(b)(6) motion is generally limited to "facts and documents that are part of or incorporated into the complaint . . . ." GE Mobile Water, Inc. v. Red Desert Reclamation, LLC, 6 F. Supp. 3d 195, 199 (D.N.H. 2014) (quoting Rivera v. Centro Medico de Turabo, Inc., 575 F.3d, 10, 15 (1st Cir. 2009)); see also Fed. R. Civ. P. 12(d). As an exception to this rule, the First Circuit permits trial courts to consider "documents the authenticity of which are not disputed by the parties; official public records; documents central to plaintiff's claim; and documents sufficiently referred to in the complaint" without converting a motion to

2

dismiss into one for summary judgment.  Id. (brackets omitted) (quoting Rivera, 565 F.3d at 15).

## **Background**

Accepting the factual allegations set forth in the amended complaint as true, the relevant facts are as follows.[2]

On August 23, 2010, the plaintiffs entered into a loan modification with Wells Fargo.  The loan modification agreement included the following language: "If on October 01, 2035, (the 'Maturity Date') Borrower still owes amounts under the Note and Security Instrument, as amended by this Agreement, Borrower will pay those amounts in full on the Maturity Date."  Amend. Compl. (doc. no. 7) ¶ 16; doc. no. 1-1, at 10.  The modification agreement did not estimate or calculate what any such payment might be.  Prior to entering into the modification, Wells Fargo confirmed to the plaintiffs by e-mail that there would be no

---

[2] The following narrative references a 2010 loan modification agreement and letters sent by Wells Fargo to the plaintiffs in February and May of 2016.  Though these documents are attached to the plaintiffs' state-court complaint as exhibits see doc. no. 1-1, at 9-19, the plaintiffs have not reattached them to their amended complaint.  As these documents remain in the record, the plaintiffs specifically reference these documents in their amended complaint, and the parties do not appear to dispute their authenticity, they may be properly considered without converting this motion to one for summary judgment.  See GE Mobile Water, Inc., 6 F. Supp. 3d at 199.

3

balloon payment under the modification.  Relying on this representation, the plaintiffs entered into the modification agreement.

On February 16, 2016, the plaintiffs received a letter from Wells Fargo with the subject line: "Important clarification about your mortgage account . . . ."  Doc. no. 1-1, at 16.  In this letter, Wells Fargo indicated for the first time that there would be a balloon payment in the amount of $109,439.97 due and owing under the loan modification on the maturity date.  The letter attributed the omission of this balloon payment from the modification agreement to a "clerical error."  Doc. no. 1-1, at 16.  On May 2, 2016, the plaintiffs received a second letter from Wells Fargo, which indicated that the balloon payment was being added under the language in the modification agreement quoted above.

Both letters made reference to an April 30, 2010 telephone conversation between Gregory McNutt and a Wells Fargo representative.  The letters suggest that this representative indicated during this conversation that there would be an interest-accruing balloon payment due and payable as of the maturity date.  This telephone conversation never occurred.

The plaintiffs have made every payment under the modification agreement in full and on time.  They bring this

4

action alleging violations of state and federal law.

## Discussion

The plaintiffs' amended complaint is comprised of seven counts. Count I is captioned "Equitable Considerations." Count II alleges fraud in the inducement. Count III alleges breach of the covenant of good faith and fair dealing. Counts IV and V respectively allege state-law negligent misrepresentation and negligence ("state tort claims"). Count VI alleges violations of the New Hampshire Consumer Protection Act ("CPA"), N.H. Rev. Stat. Ann. § 358-A. Finally, Count VII alleges violations of the Real Estate Settlement Procedure Act ("RESPA"), 12 U.S.C. § 2605(k).

Wells Fargo moves to dismiss the amended complaint in its entirety. The plaintiffs concede that Wells Fargo is exempt from the CPA and seek to voluntarily dismiss Count VI. This request is granted and Count VI is dismissed with prejudice.[3]

---

[3] As the conditions of Rule 41(a)(1) are not met here, voluntary dismissal can only be entered by court order. See Fed. R. Civ. P. 41(a)(2). Under such circumstances, a trial court has discretion to determine whether dismissal should occur with or without prejudice. See id.; see also Doe v. Urohealth Sys., Inc., 216 F.3d 157, 160–61 (1st Cir. 2000). Here, the plaintiffs concede that Count VI is not viable on its merits. Thus, dismissal with prejudice is appropriate.

The plaintiffs otherwise object to Wells Fargo's motion.[4]

### I. <u>Equitable Considerations</u>

The court turns first to the plaintiffs' claim for "equitable considerations." In their amended complaint, the plaintiffs generally allege that Wells Fargo acted inequitably, stating that Wells Fargo's actions are "unconscionable" and that the plaintiffs "should be allowed to pay their mortgage pursuant to the document they signed." Amend. Compl. ¶¶ 20, 26 (doc. no. 7). In their objection to the motion to dismiss, the plaintiffs contend that this count should survive because it is "included as a plea . . . for equitable relief even if other causes of action plead[ed] by the Plaintiffs fail." Doc. no. 9, at 2. Neither of these documents identifies a specific claim in equity that the plaintiffs wish to pursue against Wells Fargo. Indeed, the plaintiffs have failed to identify any equity theory under which they might be entitled to relief. The court declines to construe the plaintiffs' unspecified requests for "equitable considerations" as a specific claim in equity.

---

[4] The plaintiffs' objection makes no mention of their negligence claim. It is thus unclear whether they object to the dismissal of this claim. As this claim is plainly barred by the economic-loss doctrine, however, the court will briefly address it on the merits below.

Wells Fargo's motion to dismiss is accordingly granted as to Count I.

## II. Fraud in the Inducement

The court next considers the plaintiffs' claim for fraud in the inducement. Wells Fargo contends that the plaintiffs have failed to plead this claim with particularly, as required by Rule 9(b). The plaintiffs argue that they have adequately pleaded fraud.

"New Hampshire law recognizes that the procuring of a contract or conveyance by means of fraud . . . is an actionable tort . . . ." Van Der Stok v. Van Voorhees, 151 N.H. 679, 681 (2005) (internal quotation marks omitted) (citation omitted). "The party seeking to prove fraud must establish that the other party made a representation with knowledge of its falsity or with conscious indifference to its truth with the intention to cause another to rely upon it." Id. (internal quotation marks omitted) (citation omitted). "In addition, the party seeking to prove fraud must demonstrate justifiable reliance." Id. (internal quotation marks omitted) (citation omitted).

Under Rule 9(b), a party alleging fraud "must state with particularity the circumstances constituting fraud . . . ." "Rule 9(b) requires not only specifying the false statements and by whom they were made but also identifying the basis for

7

inferring scienter." N. Am. Catholic Educ. Programming Found., Inc. v. Cardinale, 567 F.3d 8, 13 (1st Cir. 2009); see also Moore v. Mortg. Elec. Registration Sys., Inc., 848 F. Supp. 2d 107, 130 (D.N.H. 2012) (citation omitted) ("[A] complaint rooted in fraud must specify the who, what, where, and when of the allegedly false or fraudulent representations."). Under established First Circuit precedent, it is inadequate to generally aver "the defendant's 'knowledge' of material falsity, unless the complaint also sets forth specific facts that make it reasonable to believe that defendant knew that a statement was materially false or misleading." Id. This heightened pleading standard applies to state-law fraud claims asserted in federal court. Id. (citation omitted).

Here, the plaintiffs have failed to allege fraud in the inducement with sufficient particularity. Though they generally allege that they received an e-mail from Wells Fargo indicating that there would be no balloon payment under the modification, they fail to identify exactly was stated in this e-mail and by whom the statement was made. Moreover, they fail to identify the basis for inferring scienter on the part of Wells Fargo. The plaintiffs contend that scienter can be inferred by Wells Fargo's greater access to information and Wells Fargo's reference in the May 2, 2016 letter to a conversation with

George McNutt that the plaintiffs contend never occurred. These facts do not support a plausible inference that Wells Fargo was either aware that its unspecified statement in the reference e-mail was false or consciously indifferent to the truth of this statement. The plaintiffs' remaining allegations of scienter are the sort of general averments of knowledge of falsity that the First Circuit has held to be inadequate.

Thus, the plaintiffs' fraud in the inducement claim fails to meet the heightened pleading standard under Rule 9(b). Wells Fargo's motion to dismiss is accordingly granted as to Count II.

### III. **Good Faith and Fair Dealing**

Wells Fargo argues that the plaintiffs' good faith and fair dealing claim must be dismissed because the loan modification expressly provides for a balloon payment. The plaintiffs object, arguing that they have adequately pleaded such a claim in their amended complaint.

"In every agreement, there is an implied covenant that the parties will act in good faith and fairly with each other." Birch Broad, Inc. v. Capitol Broad. Corp., Inc., 161 N.H. 192, 198, 13 A.3d 224 (2010). The NHSC applies this covenant in three distinct contexts: (1) contract formation; (2) termination of at-will employment agreements; and (3) limitations of

discretion in contractual performance. J & M Lumber & Const. Co. v. Smyjunas, 161 N.H. 714, 724 (2011).

The plaintiffs appear to allege two separate breaches of good faith and fair dealing by Wells Fargo: one in the formation of the modification agreement when Wells Fargo misrepresented that there would be no balloon payment under that agreement, and a second in the performance of the modification agreement when Wells Fargo informed the plaintiffs for the first time that a balloon payment in the amount of $109,439.97 would come due as of the maturity date.

A.  Contract Formation

In the context of contract formation, the covenant of good faith and fair dealing is "tantamount to the traditional duties of care to refrain from misrepresentation and to correct subsequently discovered error, insofar as any representation is intended to induce, and is material to, another party's decision to enter into a contract in justifiable reliance upon it." Centronics Corp. v. Genicom Corp., 132 N.H. 133, 139 (1989). Here, the plaintiffs allege that Wells Fargo confirmed by e-mail that there would be no balloon payment under the loan modification, and that the plaintiffs relied upon this representation in entering into the modification agreement. When assumed true, these allegations set forth a plausible claim

10

for breach of the covenant of good faith and fair dealing by Wells Fargo in the formation of the modification agreement.

    B.    <u>Discretion in Contract Performance</u>

When it comes to discretion in contractual performance, good faith and fair dealing claims are "comparatively narrow." <u>Birch</u>, 161 N.H. at 198. The function of this third category of claims "is to prohibit behavior inconsistent with the parties' agreed-upon common purpose and justified expectations as well as with common standards of decency, fairness and reasonableness." <u>Id.</u> (internal quotations omitted) (citation omitted). Whether a party has sufficiently alleged a breach under this category turns on three questions: (1) "whether the agreement allows or confers discretion on the defendant to deprive the plaintiff of a substantial portion of the benefit of the agreement"; (2) "whether the defendant exercised its discretion reasonably"; and (3) "whether the defendant's abuse of discretion caused the damage complained of." <u>Moore</u>, 848 F. Supp. 2d at 129; <u>see also</u> <u>Ahrendt v. Granite Bank</u>, 144 N.H. 308, 313 (1999).

Wells Fargo argues that the loan modification agreement did not grant it discretion with regards to the balloon payment. In support of this argument, Wells Fargo points to the language in the modification agreement stating that the plaintiffs "will pay those amounts [owed as of the maturity date] in full on the

11

Maturity Date."  See doc. no. 1-1, at 11.  This language, with the use of the imperative "will," does not confer discretion on Wells Fargo to determine whether or not to require a balloon payment in the course of performing the contract.  The modification agreement is notably silent, however, on the amount of such a balloon payment, how that amount will be calculated, and when and how the plaintiffs will be informed of that amount.  In the court's view, this silence creates an ambiguity as to whether the modification agreement bestowed discretion on Wells Fargo with respect to these matters.  As the parties have not briefed this issue, and no discovery has taken place, the court finds that this is a question more appropriately addressed on summary judgment.  The court will accordingly assume for the purposes of this order that Wells Fargo was conferred discretion under the modification agreement with respect to these aspects of the balloon payment.

   The court next considers whether Wells Fargo unreasonably exercised its discretion.  The plaintiffs allege that Wells Fargo first informed the plaintiffs of a balloon payment in the amount of $109,439.97 five-and-a-half years after the parties entered into the modification and, in doing so, made reference to a telephone call between George McNutt and a Wells Fargo representative that never occurred.  These facts, when assumed

true, support a plausible conclusion that Wells Fargo acted unreasonably, and that this caused the damage complained of by the plaintiffs.  Thus, the court concludes that the plaintiffs have stated a plausible claim under the third category of good faith and fair dealing.

In sum, the court concludes that the plaintiffs have stated plausible claims for breach of the covenant of good faith and fair dealing both with regard to the formation of the modification agreement and with regard to Wells Fargo's discretion in the performance of that agreement.  Wells Fargo's motion to dismiss is accordingly denied as to Count III.

## IV.  State-Tort Claims

With regard to the plaintiffs' state-court claims, Wells Fargo argues that the plaintiffs' claims for negligent misrepresentation and negligence are both barred by the economic-loss doctrine.  Wells Fargo also argues that the negligence claim fails because Wells Fargo did not owe the plaintiffs a duty of care.  The plaintiffs contend that their negligent misrepresentation claim falls within a recognized exception to the economic-loss doctrine.  They further no argument whatsoever with respect to their negligence claim.

Under the economic-loss doctrine, a borrower generally cannot pursue tort recovery for purely economic damages arising

in the context of a contractual relationship with a lender. See Schaefer v. Indymac Mortg. Servs., 731 F.3d 98, 103 (1st Cir. 2013) (citing Plourde Sand & Gravel Co. v. JGI E., Inc., 154 N.H. 791, 794 (2007)). There are numerous decisions from this district applying this doctrine to negligence and/or negligent misrepresentation claims brought by mortgagors against loan services/lenders related to a mortgage.[5] Still, there are certain limited exceptions to the economic-loss doctrine recognized under New Hampshire law. See, e.g., Moore, 848 F. Supp. at 133 (D.N.H. 2012) (citing Wyle v. Lees, 162 N.H. 406, 409-10 (2011)); Plourde, 154 N.H. at 795-96.

The plaintiffs do not plausibly allege in their amended complaint that one or more of these exceptions applies to their negligence claim. Moreover, they fail to address their negligence claim at all in their objection to the motion to dismiss. As such, the court concludes that this claim is barred by the economic-loss doctrine.

---

[5] See, for example, Mader v. Wells Fargo Bank, N.A., No. 16-cv-309-LM, 2017 WL 177619, at *3 (D.N.H. Jan. 17, 2017); Gasparik v. Federal National Mortgage Association, No. 16-cv-147-AJ, 2016 WL 7015672, at *4 (D.N.H. Dec. 1, 2016); Riggieri v. Caliber Home Loans, Inc., No. 16-cv-20-LM, 2016 WL 4133513, at *4-5 (D.N.H. Aug. 3, 2016); Bowser v. MTGLQ Investors, LP, No. 15-cv-154-LM, 2015 WL 4771337, at *2, 5 (D.N.H. Aug. 11, 2015).

The plaintiffs do invoke a recognized exception to the economic-loss doctrine with respect to their negligent misrepresentation claim: the aptly named "negligent misrepresentation" exception.  In order to recover under this exception, the plaintiffs must prove: (1) that Wells Fargo was a "supplier of information"; (2) that Wells Fargo "supplie[d] false information for the guidance of others in their business transactions"; (3) that in supplying this false information, Wells Fargo "fail[ed] to exercise reasonable care or competence"; (4) that the plaintiffs justifiably relied on the false information; and (5) that this justifiable reliance resulted in pecuniary harm to the plaintiffs.  See Plourde, at 799 (quoting Restatement (Second) of Torts § 552(1)); see also Schaefer, 731 F.3d at 108–109.  This exception "is narrower than the traditional tort claim" for negligent misrepresentation. Plourde, 153 N.H. at 799.

The plaintiffs allege that prior to entering into the modification agreement, Wells Fargo confirmed by e-mail that there would be no balloon payment under the loan modification. The plaintiffs allege that they entered into the modification agreement relying on this representation.  The plaintiffs further allege that Wells Fargo informed them for the first time five-and-a-half years later that a balloon of $109,439.97 would

be due and owing as of the maturity date. When assumed true, these allegations arguably satisfy the second, third, fourth, and fifth elements of the negligent misrepresentation exception.

It is less clear whether Wells Fargo is a "supplier of information" as contemplated by this exception. The NHSC has never explicitly determined what constitutes a "supplier of information," and courts from other jurisdictions are split on whether this exception applies solely to "professional suppliers of information" (such as accountants, appraisers, and investment brokers) or more broadly to "parties who profit by supplying information." Schaefer, 731 F.3d at 108 (internal quotations and citations omitted) (discussing this split in authority).[6] For its part, the First Circuit has expressed skepticism as to whether this exception extends to representations made by mortgage lenders or servicers. See id. at 108-09. And at least two opinions from this district have explicitly held that loan servicers are not "suppliers of information" such that this exception applies. Mader, 2017 WL 177619, at *3; Riggieri, 2016 WL 4133513, at *5.

---

[6] Though the New Hampshire Supreme Court has applied the negligent misrepresentation exception to defendants who were not strictly professional suppliers of information, it has only done so in limited circumstances and never in the present context. See Schaefer, 731 F.3d at 108 (citing Wyle, 162 N.H. at 408-12).

In the absence of any NHSC authority to the contrary, these federal decisions have significant persuasive value which the court is inclined to follow. Nevertheless, the court declines to rule now, as a matter of law, that Wells Fargo is not a "supplier of information." Instead, the court will allow the parties to brief this issue at the summary judgment stage. Wells Fargo's motion is accordingly denied as to the plaintiffs' negligent misrepresentation claim without prejudice to Wells Fargo re-raising the economic-loss doctrine as a defense in a motion for summary judgment.

In sum, Wells Fargo's motion to dismiss is denied without prejudice as to Count IV and granted as to Count V.

**V.   RESPA**

Finally, the court considers the plaintiffs' claim under RESPA, 12 U.S.C. § 2605(k). Wells Fargo contends that this claim fails because the plaintiffs have not adequately alleged that they made any requests to correct errors to their account. The plaintiffs object, arguing that they have pleaded "that they e-mailed [Wells Fargo] to confirm there was no balloon payment" and that Wells Fargo "failed to remedy this error in response to this request . . . ." Doc. no. 10, at 6. Wells Fargo has replied to this specific objection, contending that even assuming this e-mail was sent, there are no allegations that

17

this e-mail contained a "notice of error" as required by RESPA. Doc. no. 14.

Under RESPA, the servicer of a mortgage "shall not fail to take timely action to respond to a borrower's requests to correct errors relating to . . . avoiding foreclosure . . . ." 12 U.S.C. § 2605(k)(1)(C); see also 12 C.F.R. § 1024.35(a) ("A servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error . . . .") (emphasis added). Here, the plaintiffs allege that Wells Fargo confirmed to them by e-mail that there would be no balloon payment under the modification agreement. The plaintiffs have not alleged that this was in response to any request to correct an error made by the plaintiffs. Nor is there any independent allegation in the complaint that the plaintiffs ever made such a request. Thus, the plaintiffs have not stated a claim under § 2605(k)(1)(C).

Accordingly, Wells Fargo's motion to dismiss is granted as to Count VII.

## Conclusion

Wells Fargo's motion to dismiss (doc. no. 9) is granted as to Counts I, II, V, and VII. It is denied as to Counts III and

IV.  Count VI is voluntarily dismissed with prejudice.

SO ORDERED.

*/s/ Andrea K. Johnstone*
Andrea K. Johnstone
United States Magistrate Judge

April 5, 2017

cc:  Keith A. Mathews, Esq.
     Christopher J. Valente, Esq.